Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| MARÍA E. GONZÁLEZ CALDERÓN<br>Apelada<br><br>v.<br><br>MIGUEL E. ABREU GARCÍA<br>Apelante<br><br><br>MARÍA C. ABREU GONZÁLEZ<br>Interventora | KLAN202300800 | Apelación procedente del Tribunal de Primera Instancia, Sala de Familia y Menores de Bayamón<br><br>Caso Núm.<br>D DI2008-0579<br><br>Sobre:<br>Divorcio (Alimentos menor de edad) |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Grana Martínez y el Juez Adames Soto

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de noviembre de 2023.

Comparece el señor Miguel E. Abreu García, (señor Abreu García o peticionario), a través de un recurso que denominó de *apelación*, pero que acogemos como *certiorari*,[1] solicitando la revocación de una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, (TPI), el 11 de julio de 2023.[2] En el contexto de una revisión de pensión alimentaria, mediante dicho dictamen el foro primario concluyó que, en una *Resolución* previa, de 12 de abril de 2022, ya se había determinado el porciento que asumiría el peticionario, en cuanto a los costos universitarios de su hija menor de edad, para los años académicos 2021-2022, 2022-2023, y subsiguientes, por lo que no resultaba necesaria consideración ulterior del asunto. De acuerdo con ello, el TPI ordenó al

---

[1] El dictamen recurrido trata de un asunto interlocutorio, que no brinda finalidad a las controversias planteadas. Para propósitos administrativos, el recurso conservará el código alfanumérico correspondiente a la apelación, KLAN202300800.
[2] Notificada el 13 de julio de 2023.

NÚMERO IDENTIFICADOR

SEN2023_____

señor Abreu García a que, en el término de 20 días, propusiera un plan de pago, o le sería emitida una orden de mostrar causa.

Inconforme, el peticionario sostiene ante nosotros que el tribunal *a quo* incidió al no haber celebrado la vista evidenciaria que ordenó este Foro Apelativo en la *Sentencia* de 27 de junio de 2022, KLCE202200179, para establecer, precisamente, la proporción que asumiría cada progenitor con relación a los cambios en gastos universitarios de las hijas en común.

## I. Resumen del tracto procesal

En el 2016, el foro primario decretó disuelto el matrimonio constituido por el señor Abreu García y la señora María E. González Calderón (señora González Calderón o recurrida). Durante el matrimonio, estos habían procreado dos hijas, MCAG y ICAG, (en conjunto, las hijas), nacidas el 17 de julio de 2000 y 13 de enero de 2003, respectivamente. Mediante la sentencia de divorcio aludida se concedió la custodia de las hijas, quienes en ese entonces eran menores de edad, a la señora González Calderón, y la patria potestad de forma compartida.

Pasados varios años, el foro primario acogió una solicitud del peticionario para renunciar a la patria potestad de las hijas.

Posteriormente, el 29 de junio de 2018, el TPI dio su aprobación a un acuerdo informado por las partes respecto a la pensión alimentaria que pagaría el peticionario en favor de las hijas. Conforme el referido acuerdo, el señor Abreu García pagaría por concepto de pensión alimentaria $8,000.00 mensuales, a partir de julio de 2018, en beneficio de las hijas, además de otras partidas allí detalladas. Respecto al pago de pensión por gastos educativos de la menor de las hijas, en dicho acuerdo se dispuso lo siguiente:

> c. El señor Abreu García pagará el 100% del costo de matrículas, mensualidades y cuotas que establezca el colegio de St. John's en el que estudia la menor I.C.A.G., incluyendo pero no limitado a: fondo de construcción, cuota de

materiales, cuota de laboratorios, feria científica, cuota de graduación, ceremonia de sortija, y cualquier otra requerida por la escuela mediante pago directo a la institución en las fechas requeridas. La señora González Calderón pagará los gastos de libros, materiales, uniformes, actividades extracurriculares, tutorías, cuotas y actividades de clases, entre otros.[3]

Más adelante, la menor de las hijas culminó su escuela superior, e inició el proceso de selección de una institución universitaria para continuar sus estudios. A esos efectos, el 15 de abril de 2021, la señora González Calderón presentó ante el foro primario una *Moción en solicitud de que se determinen las partidas que el demandado pagará de la educación universitaria de la menor de las hijas a partir de su ingreso en la Universidad en agosto de 2021; en la alternativa, se refiera el caso para la revisión de pensión alimentaria por cambio en circunstancias ante ingreso de la menor de las hijas a la universidad el próximo mes de agosto de 2021.* Expresó, que la menor de las hijas ya había sido admitida en varias universidades y estaba en proceso de visitar algunas para hacer su selección. Además, manifestó que había mantenido al peticionario informado de tales gestiones. Por último, solicitó al TPI que, conforme a la estipulación de pensión alimentaria acogida mediante *Resolución* de 29 de junio de 2018, determinara que al señor Abreu García le correspondía pagar el 100% de los gastos de matrícula, cuotas y hospedaje de la hija menor, en la universidad que esta seleccionara o, en la alternativa, que el caso se refiriera para revisión de pensión alimentaria.

Visto lo anterior, el 20 de abril de 2021,[4] el TPI ordenó a que, en un término de 20 días, las partes celebraran una reunión transaccional y sometieran una moción conjunta informando los acuerdos.

No obstante, el 12 de mayo de 2021, el peticionario solicitó un término adicional para cumplir con lo ordenado, aduciendo que se encontraba en el proceso de contratar un nuevo representante legal. En

---

[3] Tomamos conocimiento del tracto procesal del caso KLCE202200179, pág. 3.
[4] Notificada el 4 de mayo de 2021.

respuesta, mediante *Resolución* de 24 de junio de 2021,[5] el TPI le concedió 10 días al peticionario para tal propósito.

Transcurrido casi un mes, el 21 de julio de 2021,[6] el foro primario emitió *Resolución,* refiriendo la petición de revisión de pensión aludida a la atención del Examinador de Pensiones Alimentarias (EPA) para su consideración.

Al día siguiente, la recurrida presentó *Urgente moción en solicitud de remedio y en oposición a "Solicitud de término adicional para concretar relación contractual abogado cliente y fijar posición".* La señora González Calderón sostuvo que el señor Abreu García había incumplido con su obligación alimentaria, y no había aportado nada para el pago de la universidad de la menor de las hijas. Solicitó que el foro primario determinara que el peticionario tenía la obligación de continuar aportando para la educación de la menor de las hijas, por lo cual, le correspondía pagar la matrícula, cuotas y hospedaje. Asimismo, requirió que se le ordenara al peticionario el pago inmediato de las cantidades adeudadas, so pena de encontrarlo incurso en desacato.

El peticionario presentó *Moción Asumiendo Representación Legal,* el 6 de agosto de 2021.[7] El 25 de agosto de 2021, el TPI aceptó la representación legal del señor Abreu García.

En el mismo día,[8] el TPI emitió una *Orden* con relación a la *Urgente moción en solicitud de remedio y en oposición a solicitud de término adicional para concretar relación contractual abogado cliente y fijar pensión* presentada por la recurrida, donde incluyó la siguiente expresión: "Como se pide". También, el foro primario indicó lo siguiente: "Se tiene el asunto por sometido sin oposición. So pena de expedir orden de arresto por desacato alimentaria tenga 10 días el demandado para

---

[5] Notificada el 29 de junio de 2021.
[6] Notificada el 22 de julio de 2021.
[7] Tomamos conocimiento del tracto procesal del caso KLCE202200179, pág. 5.
[8] Notificada el 27 de agosto de 2021.

consignar en el Tribunal los $30,980.55 que adeuda de pensión alimentaria".[9]

Inconforme, el 13 de septiembre de 2021, el señor Abreu García presentó *Urgente Solicitud de Reconsideración,* indicando que en este caso no asumiría capacidad económica y tampoco se allanaba a que la menor estudiara en la universidad que fue matriculada, sin contar con su aprobación. En ese sentido, solicitó que se dejara sin efecto la orden que lo obligaba a consignar la suma de $30,980.55, hasta que se celebrara una vista en donde se acreditara que las cantidades reclamadas procedían en derecho.

Cabe mencionar, que el 3 de septiembre de 2021, se celebró la vista ordenada por el TPI ante la EPA para revisar y establecer la proporción de los gastos universitarios. No obstante, surge del *Acta*[10] que la vista se convirtió en una sobre el estado de los procedimientos para calendarizar los asuntos pendientes, ante los argumentos de las partes de que faltaba descubrimiento de cierta documentación no provista al momento. Por otra parte, el EPA recomendó que, mientras se dilucidaba los méritos del caso, se estableciera como pensión alimentaria provisional el pago por el peticionario de $4,000.00 mensuales, para beneficio de la hija menor. Además, el EPA recomendó que el peticionario asumiera el pago de los gastos universitarios de la menor, es decir, la matrícula, cuotas y hospedaje, al estimar que era la misma responsabilidad en cuanto a los gastos universitarios de la hija que había alcanzado la mayoría de edad.

Sin embargo, el peticionario objetó la recomendación del EPA mencionada, esgrimiendo no haber autorizado que se incurriera en tales gastos universitarios, habiendo alternativas de estudios más económicas.

---

[9] Apéndice X del recurso, pág. 22
[10] Emitida el 13 de septiembre de 2021 y notificada el 27 de septiembre de 2021.

A pesar de ello, el EPA sostuvo su recomendación sobre el pago de los gastos universitarios de la hija menor por el peticionario, e instruyó a las partes a presentar sus argumentos ante el TPI, de modo que quedaran resueltos previa a la vista para la determinación de la pensión final.

Así las cosas, el 15 de septiembre de 2021,[11] el TPI emitió una *Orden de Pensión Alimentaria Provisional,* acogiendo las recomendaciones del EPA. Por tanto, estableció el pago por el peticionario de $4,000.00 en concepto de pensión alimentaria provisional en beneficio de la hija menor, además del 100% de los gastos universitarios de esta, en cuanto a matrícula, cuotas y hospedaje. Finalmente, el foro primario advirtió que la referida pensión provisional regiría hasta una nueva determinación, y señaló vista en su fondo para el 3 de diciembre de 2021.

En la misma fecha,[12] el TPI resolvió la *Solicitud de reconsideración* que había presentado el peticionario, disponiendo lo siguiente:

> El debido proceso de ley fue concedido a la parte y no se expresó. Sin embargo, se reconsidera lo dispuesto y se señala Vista de desacato para el 6 de octubre de 2021 a las 3:00 p.m.

Luego, la señora González Calderón presentó *Moción reiterando solicitud de desacato, actualizando el balance de la deuda y en solicitud de remedios*. En síntesis, sostuvo que, aunque el señor Abreu García estaba pagando la cantidad de $4,000.00 establecidos como pensión alimentaria, no estaba aportando para los gastos universitarios. Por tanto, alegó que el peticionario había acumulado una deuda de $37,749.60 adicionales, por concepto de gastos universitarios, para una deuda total de $65,730.15, más los intereses legales.

En atención a lo anterior, el 29 de noviembre de 2021,[13] el TPI emitió la siguiente *Orden:*

---

[11] Notificada el 27 de septiembre de 2021.
[12] Notificada el 27 de septiembre de 2021.

Tenga 5 días la parte demandada para acreditar el pago de los $65,730.15 que se alega adeuda, so pena de expedir las órdenes solicitadas.

Ante dicha *Orden*, el 8 de diciembre de 2021, el señor Abreu García presentó una *Moción en cumplimiento de orden y reiterando posición en cuanto a falta de consentimiento del demandado al proceso de matrícula en una institución universitaria de alto costo.* En síntesis, expresó que había presentado una moción de reconsideración, la cual fue resuelta de manera favorable, con relación a que se tenía que realizar una vista para determinar el asunto relacionado a los gastos universitarios de la hija menor. Adujo que no se podía expedir una orden de desacato, cuando no se había considerado y determinado el alcance de su obligación respecto a los gastos universitarios de la menor de las hijas. Ante ello, solicitó que se diera por cumplida la *Orden* y se celebrara una vista en donde se consideraran los planteamientos sobre la falta de consentimiento.

En respuesta, el 13 de diciembre de 2021,[14] el TPI emitió una *Orden* dirigida al peticionario, en la que estableció lo siguiente: "*Cumpla con consignar la cantidad ordenada ($30,980.55) so pena de sanciones. Los demás asuntos serán atendidos en vista pautada. Tenga 5 días*".

En desacuerdo, el peticionario presentó un recurso de *certiorari* ante este Foro apelativo, identificado con el alfanumérico KLCE202101515, cuya expedición denegamos mediante *Resolución* de 18 de enero de 2022.

Ese mismo día, se celebró *Vista de Desacato* pautada ante el TPI. Conforme surge de la *Minuta Resolución,* la recurrida sostuvo que la deuda de pensión alimentaria reclamada era de $59,630.80, de acuerdo con lo dispuesto en la orden de pensión alimentaria provisional del 15 de septiembre de 2021. Sobre lo cual, en la *Minuta Resolución* se hizo

---

[13] Notificada el 1 de diciembre de 2021.
[14] Notificada el 14 de diciembre de 2021.

constar que el peticionario *refuta y hace planteamientos,* aunque no dejó constancia de qué fue lo planteado. Lo que sí consta en la *Minuta Resolución* es que el TPI manifestó que, cuando determinó reconsiderar la *Orden* emitida el 15 de septiembre de 2021, no reconsideró la orden de alimentos, sino solo la orden de desacato. Reiteró el Tribunal que, "[n]o se puede inferirse que la Resolución de reconsideración dejaba sin efecto la misma Resolución que se emitió ese mismo día".[15] El foro recurrido expresó que entendía que el peticionario haya tenido confusión con la interpretación de la *Resolución* emitida el 15 de septiembre de 2021, y por dicha razón no lo encontró incurso en desacato. A esos efectos, el TPI le concedió el término de 30 días para realizar el pago completo de la obligación alimentaria con relación a los gastos de educación, para un total de $59,630.80. Asimismo, el foro primario aclaró que no era necesaria la autorización del peticionario para la educación universitaria, toda vez que la señora González Calderón ostenta la patria potestad exclusiva de la menor de las hijas y esa decisión le corresponde exclusivamente a la recurrida.

A la luz de lo anterior, el 18 de febrero de 2022, el peticionario presentó un recurso de *certiorari* ante este Tribunal de Apelaciones, KLCE202200179. En esencia, el señor Abreu García sostuvo que el TPI había errado al determinar que, debido a que la señora González Calderón ejerce la patria potestad exclusiva de su hija, no estaba obligada a obtener consentimiento del peticionario en decisiones que requerían desembolsos y aportaciones económicas de éste. También, alegó que el foro primario incidió al ordenarle a emitir un pago de $59,630.80, monto que constituye el 100% de los gastos de educación en una institución universitaria con costos exageradamente elevados, seleccionada de forma exclusiva por la recurrida. El señor Abreu García

---

[15] Apéndice XX del recurso, pág. 51.

argumentó que resultaba injusto obligarlo a pagar una cuantía considerable tomando en consideración la alegación de una parte, sin que él hubiera tenido derecho a defenderse de la misma y sin una determinación judicial fundamentada avalando la cuantía alegada. Advirtió que se mantenía pagando la pensión fija establecida mediante *Orden.*

En el interín, el 4 de abril de 2022, se celebró ante el EPA una vista sobre revisión de pensión alimentaria. Surge del *Acta* de la vista sobre revisión, emitida el 5 de abril de 2022,[16] que las partes acordaron continuar las negociaciones para lograr un acuerdo que le pusiera fin al incidente de alimentos. Asimismo, se estableció que el 6 de abril de 2022, presentarían el informe con antelación al juicio, y el 7 de abril de 2022, se celebraría una videoconferencia con el EPA para discutir el informe sometido, marcar la evidencia y seleccionar las fechas del juicio en su fondo.

Así las cosas, el 6 de abril de 2022,[17] mediante *Acta,* el EPA expresó que la vista señalada para el 7 de abril de 2022 quedaba suspendida. Esto, debido a que los abogados de las partes informaron mediante conferencia telefónica que sus representados habían logrado un acuerdo de pensión alimentaria que ponía fin al incidente de alimentos. En consonancia, el EPA, a solicitud de las partes, les concedió un término de 5 días para que sometieran la referida estipulación por escrito.

En consecuencia, el 11 de abril de 2022, las partes presentaron ante el TPI una *Estipulación Parcial.* Mediante esta, acordaron parte de los componentes de la pensión alimentaria, así como la proporción que a cada parte le correspondía en los gastos suplementarios. No obstante, informaron que la base del costo de la educación universitaria sobre la

---

[16] Notificada el 20 de abril de 2022.
[17] Notificada el 20 de abril de 2022.

que el señor Abreu García debía aportar para la menor de las hijas quedaba pendiente a que el Tribunal lo determinara, pues se encontraba ante este Tribunal de Apelaciones la revisión sobre lo que constituía el alcance del ejercicio de la patria potestad exclusiva. Con todo, el señor Abreu García realizó una aportación directa a la recurrida de $20,000.00 para los gastos de educación correspondientes al año académico 2021-2022.

A tenor con la aludida *Estipulación Parcial,* los acuerdos alcanzados por las partes fueron los siguientes:

a. La revisión de la pensión alimentaria para la hija menor de edad será efectiva el 1ro. de agosto de 2021.
b. Exclusivamente para este proceso de revisión de la pensión alimentaria de la hija menor de edad:
   i. El ingreso neto de la demandante se establece en $12,500.00 mensuales;
   ii. El ingreso neto del demandado se establece en $48,000.00 mensuales;
   iii. Para el cómputo de la pensión alimentaria se consideraron ingresos no recurrentes recibidos por la demandante por concepto de herencia en los años 2020 y 2021.
c. La proporción en que los progenitores deberán aportar a la pensión alimentaria se estipula en 70% el demandado y 30% la demandante para el año académico 2021-2022. Para el año académico 2022-2023 y subsiguientes, la proporción se estipula 79% el demandado y 21% la demandante.
d. La pensión alimentaria básica se estipula en la cantidad de $4,000.00 mensuales, pagadera en los primeros cinco (5) días del mes mediante depósito directo a la cuenta bancaria de la madre custodio.
e. No se incluye en el cómputo de pensión alimentaria el gasto de vivienda en Puerto Rico, el cual asumirá la madre custodio en su totalidad. El costo de vivienda a considerarse en el cómputo de la obligación suplementaria pendiente será el de hospedaje ("dorms") en la institución que sirva de base al cómputo de dicha obligación suplementaria u otro similar, cuyo pago sea equivalente al de los "dorms" en el año académico correspondiente, siempre que dicha alternativa esté disponible.
f. La aportación del padre a los gastos de libros y materiales será de $1,600.00 anuales y para viajes a la universidad de $500.00 anuales para un total de $2,100.00, lo que equivale a $175.00 mensuales. Esta aportación suplementaria será pagada conjuntamente con la pensión alimentaria básica mediante depósito a la cuenta bancaria de la madre custodio, por tanto, el pago mensual a realizarse de forma directa, tanto de pensión

básica como de la partida suplementaria acordada totaliza $4,175.00.

g. El componente de gasto de universidad incluirá: matrícula, cuotas, hospedaje y plan médico provisto por la universidad. El señor Abreu García no aportará al plan de alimentos ("meal plan"), así como gastos de ropa, alimentos fuera del hogar, utilidades, gastos cotidianos de la menor, entretenimientos, transportación cotidiana y otros similares, están cubiertos por los $4,000.00 pensión básica acordada. En o antes del 15 de junio y del 15 de noviembre de cada año, el demandado indicará si hará su aportación a los gastos de universidad del semestre mediante pago global o mediante pagos aplazados. De acogerse al pago global, hará el pago cinco (5) días previo a la fecha de vencimiento dispuesta por la universidad. Si se acoge el plan de pagos, hará el pago a la demandante mediante depósito a su cuenta bancaria entre los días 1 al 10 de cada mes que aplica el plan de pagos dispuesto por la universidad (actualmente es de julio a noviembre para el primer semestre y de diciembre a abril para el segundo semestre).

Este acuerdo no contempla aportación alguna para estudios en periodos vacacionales, ni estudios fuera del "curriculum" universitario dispuesto para el programa en el que está matriculada la menor. El componente de gastos universitarios acordados es para los semestres agosto-diciembre y enero-mayo de cada año académico, y la señora González Calderón está consciente de que el señor Abreu García no hará aportaciones para cubrir gastos para estudios en periodos vacacionales tales como verano y otros.

h. El padre mantendrá el 79% de los gastos médicos no cubiertos por el plan, incluyendo deducibles en exceso de $75.00 por ocurrencia.

i. El padre tendrá derecho a reclamar a la menor como dependiente en su planilla de contribución sobre ingresos.[18]

Cónsono con lo anterior, **el 12 de abril de 2022,**[19] **el TPI emitió** *Resolución* **aprobando la** *Estipulación Parcial* **presentada por las partes**.

Luego de que fuera aprobada la *Estipulación Parcial,* en los términos citados, el 27 de junio de 2022,[20] este Tribunal Apelativo emitió *Sentencia* revocatoria de la *Resolución* recurrida en el caso KLCE202200179, por lo que dispusimos la devolución del caso al foro primario, para que de manera inmediata ordenara la celebración de una

---

[18] Apéndice 25 del recurso de *certiorari*, págs. 119-124
[19] Notificada el 20 de abril de 2022.
[20] Notificada el 28 de junio de 2022.

vista en la que se determinara la proporcionalidad que correspondería a las partes asumir en el pago de la pensión alimentaria, ante el alegado cambio de circunstancias acontecidas en los gastos de educación de la hija menor. En específico, dijimos que la vista tenía el propósito de proveer a las partes la oportunidad de pasar prueba sobre la petición de revisión de pensión alimentaria pendiente, luego de lo cual el TPI estaría en verdadera posición de adjudicar: si acontecieron los cambios sustanciales en los gastos que alegó la recurrida; cuáles gastos habría que ser pagados por las partes y en qué proporción. Al momento de ser expedida nuestra *Sentencia* del 27 de junio de 2022, no se nos había dado conocimiento de la *Resolución* del TPI mediante la cual se aprobó la *Estipulación Parcial* alcanzada por las partes.

En cualquier caso, el 26 de agosto de 2022,[21] el TPI refirió el asunto ante el EPA para que celebrara la vista de alimentos y determinara el "alegado aumento en las necesidades de la menor, frente a los recursos del alimentante, dando paso al principio de proporcionalidad discutido",[22] según estableció este Foro apelativo en su *Sentencia*. De esta manera, el TPI indicó que en la vista se consideraría la prueba que se presentara sobre las necesidades de la menor –incluyendo las educativas–, y la prueba de los recursos del peticionario, para así determinar la proporcionalidad.

El 7 de septiembre de 2022, el peticionario presentó *Urgente solicitud de transferencia de vista por conflicto en calendario*.

No obstante, el 11 de octubre de 2022, el señor Abreu García presentó un recurso de *certiorari*, KLCE202201096, ante este Tribunal de Apelaciones. En su recurso, el peticionario señaló que el TPI había errado al intimar que no le cobijaban los derechos que le confiere la *Ley para el Sustento de Menores* y al indicar en su orden que lo único que se tenía

---

[21] Notificada el 1 de septiembre de 2022.
[22] Apéndice XXXI del recurso, pág. 155.

que considerar era el principio de proporcionalidad, dejando fuera el concepto de razonabilidad del gasto reclamado. Asimismo, adujo que el foro primario incidió al emitir una orden refiriendo el asunto al EPA, sin haber celebrado previamente una vista evidenciaria para considerar la razonabilidad del gasto universitario reclamado. Junto al recurso de *certiorari*, el peticionario presentó una *Urgente solicitud en auxilio de jurisdicción.*

Ese mismo día, en la vista pautada ante el EPA sobre pensión alimentaria, este se abstuvo de intervenir en el caso, y lo refirió al TPI sin recomendación alguna, puesto que la controversia referente a la falta de autorización sobre los gastos universitarios se encontraba ante la consideración de este Tribunal Apelativo. Empero, el EPA expresó que la proporcionalidad en que los padres debían responder por los gastos educativos era un "asunto de fácil adjudicación, luego que las partes sometieran una estipulación previa los ingresos netos mensuales a ser reconocidos a ambos progenitores para realizar dicho cómputo".[23]

Respecto al recurso de *certiorari* instado por el peticionario el 11 de octubre de 2022, KLCE202201096, el mismo día en que fue presentado este Panel apelativo emitió una *Resolución* denegando tanto su expedición, como la paralización de los procesos ante el TPI.

Como secuela, el 24 de octubre de 2022, la recurrida presentó *Moción en solicitud se determine la cantidad adeudada por el demandado por el componente de educación que forma parte de la pensión alimentaria de la hija menor de edad, conforme Resolución de 12 de abril de 2022, y se ordene su pago; solicitud de desacato por deuda acumulada.* En resumen, la señora González Calderón señaló que al momento del Tribunal de Apelaciones emitir su *Sentencia,* la partes no le habían informado a este foro la *Estipulación Parcial* presentada ante el TPI, ni la

---

[23] Apéndice XXXV, pág. 195.

*Resolución* del 12 de abril de 2022, acogiendo dicha estipulación y disponiendo la proporción que cada parte aportaría para los gastos universitarios. Añadió que, ante dicha *Estipulación Parcial,* la única evidencia pendiente de presentar ante el TPI eran los gastos de matrícula, cuotas, hospedaje y plan médico provisto por la universidad, y a partir de los referidos cambios, se debía aplicar la proporción estipulada. La recurrida indicó que no existía controversia en que, (1) la menor cursa estudios universitarios en Tufts University desde agosto de 2021; (2) que hubo un aumento en las necesidades de la menor, y (3) que se estipuló las partidas para las que el peticionario aportaría. Por consiguiente, argumentó que procedía determinar la deuda acumulada por gastos universitarios por un total de $66,039.55. Solicitó que el TPI ordenara su pago en un término no mayor de 30 días, so pena de encontrarlo incurso en desacato.

Visto lo anterior, el 25 de octubre de 2022, el TPI emitió *Orden* indicando que se encontraba en espera del mandato del Tribunal de Apelaciones para proceder.

Entretanto, el peticionario presentó petición de *certiorari* ante el Tribunal Supremo, señalando que este Foro Apelativo había errado al no atender su solicitud de intervención y permitir que el TPI eludiera el mandato emitido en el caso KLCE202200179, dando paso a un trámite distinto al ordenado. También, manifestó que había incidido el Tribunal de Apelaciones al permitir que el TPI refiriera el asunto al EPA, sin haber celebrado previamente una vista evidenciaria para considerar la procedencia y razonabilidad del gasto universitario reclamado, asunto que, alegó, no era de la competencia del EPA.

El 20 de enero de 2023,[24] el Tribunal Supremo declaró No Ha Lugar el más reciente recurso de *certiorari* presentado por el peticionario.

---

[24] Notificada el 25 de enero de 2023.

En desacuerdo, el 8 de febrero de 2023, el peticionario presentó *Moción de reconsideración* ante ese alto Foro, la cual fue denegada el 24 de marzo de 2023. No obstante, el señor Abreu García insistió en su reclamo, mediante *Segunda Moción de Reconsideración,* a la que el Tribunal Supremo dispuso: "se provee No Ha Lugar. Aténgase a lo resuelto".[25]

Pasados unos meses, el 13 de junio de 2023, la señora González Calderón presentó *Moción en Solicitud de Desacato* ante el TPI. Adujo que, luego de varios trámites procesales en el Tribunal de Apelaciones y el Tribunal Supremo, el peticionario no había prevalecido en su postura de que debía ser consultado sobre la universidad que asistiría la menor de las hijas. Por lo cual, solicitó que se señalara una vista para que el señor Abreu García mostrara causa por la que no debía ser encontrado incurso en desacato por su incumplimiento con la pensión alimentaria, acumulando una deuda de $94,853.22 en el reglón de educación y una deuda de $3,850.00 en la pensión alimentaria regular estipulada, para un total de $98,703.22.

En atención a tal petición, el TPI emitió *Orden* determinando lo siguiente:

1. Tiene el Sr. Abreu García 15 días para ponerse al día en la deuda acumulada o el mismo término para mostrar causa por la cual no deba ser encontrado incurso en desacato. De guardar silencio el Tribunal procederá.

2. No se deberá relitigar asuntos ya dispuestos o atendidos por los foros apelativos.

Ante lo ordenado, el 30 de junio de 2023, el peticionario presentó *Escrito en cumplimiento de orden y en oposición a solicitud de desacato.* Explicó que la *Estipulación Parcial* establecía claramente que no había acuerdo alguno en cuanto al pago de la universidad de la menor de las hijas. Por tanto, no habiendo acuerdo sobre el particular, y a falta de un

---

[25] Apéndice XLV del recurso, pág. 269.

dictamen judicial, alegó que la suma reclamada por la recurrida no era líquida y exigible.

Es así que, el 11 de julio de 2023,[26] el TPI emitió la siguiente *Orden*:

> Examinado el expediente, la Resolución emitida el 12 de abril de 2022, sí determinó el porciento atribuible al demandado en cuanto al año académico 2021-2022, 2022-2023 y subsiguiente.
>
> En vista de lo anterior, proponga el demandado un plan de pago o el Tribunal emitirá una orden de mostrar causa. Tiene 20 días.

Insatisfecho, el 31 de julio de 2023, el peticionario presentó una *Moción de Reconsideración,* que fue denegada.

Aun en desacuerdo, el peticionario presentó el recurso de *certiorari* que está ante nuestra consideración, señalando los siguientes errores:

> **Primer error:** erró el TPI al incumplir con el mandato expresamente dispuesto por el TA en la sentencia del caso KLCE202200179, que ordenaba la celebración de una vista probatoria de forma tal que "el foro primario qued[e] en posición de adjudicar si acontecieron los cambios sustanciales alegados, cuáles gastos habría que pagar y en qué proporción serán asumidos al establecer la pensión alimentaria".
>
> **Segundo error:** Erró el TPI al dar un alcance distinto a lo expresamente pactado por las partes en la estipulación parcial suscrita por ambos, que data de una fecha anterior al dictamen emitido por el TA en el caso KLCE202200179. De esa forma el TPI ignoró la obligación de celebrar la vista probatoria mandatada como requisito previo a imponer la obligación relacionada al gasto de estudios universitarios de la menor.

El 22 de septiembre de 2023, la recurrida presentó *Solicitud de Desestimación de Apelación por falta de jurisdicción; en la alternativa, oposición a expedición del recurso de certiorari y alegato en oposición.*

Por su parte, el 27 de septiembre de 2023, el peticionario presentó *Oposición a solicitud de desestimación.*

Contando con la comparecencia de las partes, procedemos a exponer la normativa jurídica aplicable.

---

[26] Notificada el 13 de julio de 2023.

**II. Exposición de Derecho**

a.

Sin pretensión de reiterar todo el derecho expuesto en el KLCE202200179, al glosar sobre el alto interés público que impera en nuestro ordenamiento sobre el derecho de los hijos a que sus padres los alimenten, baste reproducir lo siguiente; la Carta de Derechos de la Constitución de Puerto Rico reconoce el derecho a la vida como un derecho fundamental del ser humano. Art. II, Sec. 7, Const. ELA, LPRA, Tomo I. Conforme a este principio, el Tribunal Supremo ha expresado que la obligación de los progenitores de proveer alimentos a sus hijos menores de edad es de índole constitucional y parte esencial del derecho a la vida. *Martínez v. Rodríguez,* 160 DPR 145, 151 (2006); *Maldonado v. Cruz,* 161 DPR 1, 12 (2004); *Ríos v. Narváez,* 163 DPR 611, 617 (2004); *McConnell v. Palau,* 161 DPR 734, 745 (2004); *Chévere v. Levis,* 150 DPR 525, 533 (2000). Por tal razón, los casos de alimentos, en particular los relacionados con menores de edad, están revestidos del más alto interés público. *Maldonado v. Cruz,* supra, pág. 12; *Ríos v. Narváez,* supra, pág. 618; *Chévere v. Levis,* pág. 535. Así, el derecho constitucional a recibir alimentos, "es un derecho de tan alto interés público que el Estado, como parte de su política pública, ha legislado ampliamente para velar por su cumplimiento". *Ríos v. Narváez, supra,* pág. 618; *Chévere v. Levis,* pág. 535.

El concepto de alimentos que viene obligado a proveer un alimentante incluye todo aquello que sea indispensable para el sustento, habitación, vestido, recreación y asistencia médica de una persona, según la posición social de la familia. *Íd.,* § 7531; *McConnell* v. *Palau,* supra en las págs. 745-746; *Argüello* v. *Argüello,* 155 DPR 62, 70 (2001); *Chévere Mouriño* v. *Levis Goldstein,* 152 DPR 492, 501 (2000); *Mundo* v. *Cervoni,* 115 DPR 422, 426 (1984). También incluye la educación de los

alimentistas mientras sean menores de edad e, inclusive, hasta que terminen alguna carrera iniciada en ese periodo. *Argüello v. Argüello*, supra, pág. 70; *Key Nieves v. Oyola Nieves*, 116 DPR 261, 266 (1985). Además, las atenciones de previsión acomodado a los usos y las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales. 31 LPRA § 7532.

b.

Por el contrato de transacción, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre. Artículo 1497 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10641. El contrato de transacción se interpreta restrictivamente. Artículo 1499 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10643. La transacción produce el efecto de la cosa juzgada. Artículo 1500 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10644.

Los contratos de transacción suponen la existencia de una controversia o relación jurídica incierta litigiosa y la intención de las partes de eliminar o superar esa controversia mediante concesiones recíprocas. *Rodríguez v. Hospital*, 186 DPR 889, 903 (2012). La finalidad de este tipo de contrato es evitar toda controversia entendida aquella como divergencia, disputa o debate, esto es, como situación en la que se encuentran dos personas que sostienen tesis diferentes respecto a una determinada relación. *Orsini García v. Srio. de Hacienda*, 177 DPR 596 (2009).[27]

Por cuanto la transacción produce efecto de la cosa juzgada, *lo pactado por las partes debe considerarse como definitivamente resuelto y éstas no pueden volver sobre ello. Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 DPR 860, 872 (1995).

---

[27] Este caso fue revocado por fundamentos no pertinentes al contrato de transacción citado en esta parte.

Un contrato de transacción puede ser de naturaleza judicial o extrajudicial. *Rodríguez v. Hospital,* supra. La transacción judicial ocurre cuando ya comenzado el pleito, las partes llegan a un acuerdo transaccional y lo hacen incorporar al proceso en curso. *Íd.* Esto, a diferencia de una transacción extrajudicial, que se celebra antes de que comience el pleito que se quiere evitar, o una vez comenzado, las partes acuerdan una transacción sin la intervención del tribunal. Para la transacción extrajudicial bastará el mero aviso de desistimiento del pleito, aun cuando las partes sólo mencionen que se ha llegado a un acuerdo entre las partes. *Íd.*

c.

El mandato es "una orden de un tribunal superior a uno de inferior jerarquía, notificándole haber revisado el caso en apelación y enviándole los términos de su sentencia". *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 300-301 (2012) citando a I. Rivera García, *Diccionario de Términos Jurídicos,* New Hampshire, Ed. Equity Publishing Corporation, 1976, pág. 158. En este sentido, "es el medio oficial que posee un tribunal apelativo para comunicar a un tribunal inferior la disposición de la sentencia objeto de revisión y **para ordenarle el cumplimiento de lo acordado**". *Id.* pág.301. (Énfasis nuestro). El objetivo del mandato es "lograr que el tribunal inferior actúe en forma consistente con los pronunciamientos del tribunal apelativo". *Íd.; El Pueblo de Puerto Rico v. Serrano Chang,* 201 DPR 643, 650 (2018).

Sobre el mandato y la jurisdicción del foro primario nuestro más alto Foro ha indicado:

> Una vez el Secretario del tribunal remite el *mandato,* el caso que estaba ante la consideración de dicho foro finaliza para todos los efectos. Así pues, el tribunal de jerarquía inferior **adquiere la facultad de continuar con los procedimientos, según lo que haya dictaminado el tribunal apelativo**. Una vez el mandato es remitido al tribunal de jerarquía inferior, este readquiere jurisdicción sobre el caso a los únicos fines de ejecutar la sentencia, tal

como fue emitida en apelación, y el tribunal apelativo pierde la suya. *Íd.,* págs. 651-652*; Colón y otros v. Frito Lay,* 186 DPR 135, 153-154 (2012). (Énfasis provisto).

Abundando, el Tribunal Supremo ha expresado que "el mandato guarda una función dual que impacta la jurisdicción del tribunal de menor jerarquía. Primeramente, le reviste nuevamente con autoridad sobre el caso, a la vez que le permite disponer de este conforme las directrices impartidas por la resolución o sentencia concernida". *Colón y otros v. Frito Lay,* supra, en la pág. 155. Además, "recibido el mandato, lo resuelto por el tribunal apelativo constituye la ley del caso y el tribunal inferior debe limitarse a cumplir con lo ordenado". *Rosso Descartes v. BGF*, 187 DPR 184, 192 (2012) (Sentencia).

## III. **Aplicación del Derecho a los hechos**

a.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, nos habilita para revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra, en lo pertinente, *en casos de relaciones de familia.* La revisión de una pensión alimentaria ubica dentro de tal categoría, de modo que estamos autorizados para, ejercitando nuestra discreción, determinar si expedimos el recurso de *certiorari* solicitado.

En su *Oposición a expedición de recurso de certiorari* la recurrida argumentó, brevemente, sobre una presunta falta de jurisdicción de este foro intermedio para considerar el denominado *recurso de apelación* instado por el apelante, pues pretende la revisión de una *Sentencia Parcial,* de manera prematura. El argumento resulta, como mínimo confuso, pero, en cualquier caso, no tiene razón. Simplemente estamos ante la revisión de un asunto interlocutorio, que por tratar de casos de relaciones de familia nos coloca en posición de considerarlo, si así

ejerciéramos nuestra discreción, por lo que denegamos tal petición de desestimación.

b.

Los errores señalados están íntimamente relacionados, de modo que son susceptibles de discusión en conjunto, y así obraremos.

El señor Abreu García arguye que incidió el TPI al emitir la *Resolución* recurrida, por cuanto incumplió con lo ordenado por este Foro apelativo en la *Sentencia* de 27 de junio de 2022, KLCE202200179. En específico, el peticionario sostiene que el foro recurrido no cumplió con nuestra orden para que celebrara una vista probatoria en la que la partes tuvieran oportunidad de presentar prueba relativa a: si acontecieron los cambios sustanciales alegados por la recurrida en los gastos universitarios de la menor de las hijas; cuáles gastos habría que pagar y; en qué proporción serían asumidos al establecer la pensión alimentaria. Atribuyó tal determinación por parte del foro recurrido, a una interpretación errónea sobre los términos pactados en la *Estipulación Parcial* suscrita por las partes.

Opone a ello la señora González Calderón, que la vista evidenciaria ordenada por este Tribunal de Apelaciones se tornó académica, toda vez que las partes suscribieron una *Estipulación Parcial,* acogida por el TPI mediante *Resolución* de 12 de abril de 2022, en la cual fue acordada la proporción que cada uno debía aportar a la educación universitaria de la hija menor de edad, conforme a sus respectivos ingresos. Es decir, juzga la recurrida que la mencionada *Estipulación* cumplió el propósito para el cual este foro intermedio le había ordenado al TPI celebrar una vista evidenciaria.

c.

Como se desprende del largo tracto procesal, no cabe duda de que, en la *Sentencia* de 27 de junio de 2022, ordenamos al tribunal *a quo* a

celebrar una vista evidenciara para conceder a las partes la oportunidad de presentar prueba sobre el alegado aumento de las necesidades de la menor, (causa de la solicitud de revisión de la pensión alimentaria), frente a los recursos del señor Abreu García, y precisar cuáles gastos este habría de pagar y en qué proporción.

Tampoco hay controversia real sobre el hecho procesal de que, una vez el TPI recibió el mandato del Tribunal de Apelaciones, este ordenó que se celebrara ante la EPA una vista de alimentos, para cumplir con la determinación de este Foro, pero no fue realizada. Según detallamos en el tracto procesal, aunque el asunto le fue referido al EPA, este se abstuvo de atenderlo, bajo el fundamento de que el peticionario había presentado otro recurso de *certiorari,* KLCE202201096, cuestionando la facultad del EPA para entender en la controversia.

Lo cierto es que, mientras dilucidábamos la controversia esgrimida por el peticionario en el KLCE202200179, las partes llegaron a una serie de acuerdos, siendo recogidos en la *Estipulación Parcial* antes reproducida, y aprobados por el TPI mediante *Resolución* de 12 de abril de 2022. A través de tal acuerdo fueron atendidos varios de los asuntos que permanecían en ese momento *sub judice* ante nuestra atención. No hay controversia de que a este Foro intermedio no se le puso en conocimiento de la *Estipulación Parcial* firmada por las partes, mientras dilucidó y luego emitió la *Sentencia* del KLCE202200179.

Por tanto, resulta necesario dirigir nuestra atención a la *Estipulación Parcial* aludida, para aquilatar el efecto que tuvo, si alguno, sobre el mandato que surge de nuestra *Sentencia* de 27 de junio de 2022. Sobre ello, cabe iniciar aseverando que las partes **no** tenían impedimento legal para llegar a los acuerdos que entendieran pertinentes, a pesar de este Panel encontrarse dirimiendo las controversias presentadas en el KLCE202200179, cuya relación con lo allí estipulado resultaba evidente.

Por consiguiente, reputamos tal *Estipulación Parcial* como una *transacción judicial,* en tanto se trató de una estipulación suscrita por las partes y aceptada por el tribunal mediante *Resolución,* que finalizó ciertos incidentes dentro del pleito, constitutiva de un contrato de transacción que obliga a las partes. *Negrón Vélez v. Autoridad de Carreteras y Transportación,* 196 DPR 489, 507 (2016); *Ex parte Negrón Rivera y Bonilla,* 120 DPR 61, 74 (1987).

Sin embargo, también cabe considerar que, *el contrato de transacción se interpreta restrictivamente.* Artículo 1499 del Código Civil de 2020, *supra.* Por esta razón nuestro Tribunal Supremo ha advertido que, *la eficacia del contrato de transacción no puede alcanzar a otros objetos que no surgen expresamente de su contenido. Blás v. Hospital Guadalupe,* 167 DPR 439, 450 (2006). De lo que se sigue que es necesario determinar qué asuntos fueron incluidos en la *Estipulación Parcial,* y cuáles no fueron allí decididos, con relación a los propósitos para los que ordenamos celebrar una vista evidenciaria en el KLCE202200179.

Entonces, mirando nuevamente los términos de la *Estipulación Parcial,* no hay controversia de que allí las partes finiquitaron, en lo pertinente, los siguientes asuntos: (1) la proporción que cada parte aportaría a la pensión alimentaria de la menor de las hijas para el año académico 2021-2022, 2022-2023 y subsiguientes y, (2) la pensión básica a pagarse por el peticionario. Tales acuerdos necesariamente respondieron a la aceptación por las partes de que hubo cambios de circunstancias en los gastos de educación de la hija menor. Tales asuntos no tendrán que se relitigados.

Sin embargo, observamos que el expediente sigue huérfano de prueba desfilada sobre **cuáles son los nuevos gastos de dicha menor, pues no han sido precisados con la presentación de la evidencia**

**pertinente sobre los mismos, ni fueron acordados como parte de la *Estipulación Parcial*.** Este asunto tendrá que ser dilucidado mediante vista evidenciaria, según disponemos a continuación.

Valga recordar en este punto, que *el mandato es el medio oficial que posee un tribunal apelativo para comunicar a un tribunal inferior la disposición de la sentencia objeto de revisión y para ordenarle el cumplimiento de lo acordado. Mejías et al. v. Carrasquillo et al.*, supra. Una vez el tribunal de menor jerarquía recibe el mandato, adquiere autoridad sobre el caso y puede disponer de este conforme las directrices impartidas por la resolución o sentencia concernida. *Colón y otros v. Frito Lay,* supra.

En definitiva, reconocemos el efecto que ha tenido en el curso decisorio del TPI la *Estipulación Parcial* que aprobó mediante Resolución de 12 de abril de 2022, respecto a la *Orden* que impartimos en nuestra *Sentencia* de 27 de junio de 2022. Sin embargo, atendiendo el principio de que el contrato de transacción se interpreta restrictivamente, no acogemos la teoría legal de la recurrida, afirmando que la *Estipulación Parcial* había tornado en académica la vista que ordenáramos en estos procedimientos, ni tampoco coincidimos con el TPI cuando, en la *Resolución* recurrida, concluyó que la determinación del por ciento atribuible al recurrido respecto al pago de pensión alimentaria por el año académico 2021-2022, 2022-2023 acordado en la *Estipulación Parcial*, dispuso de todas las controversias.

Por tanto, corresponde devolver el asunto al foro recurrido para que ordene, sin pausa, la celebración de una vista evidenciaria, con el propósito muy limitado aquí discutido, sin que se interprete que estamos abriendo la puerta para relitigar los asuntos que ya fueron acordados en la *Estipulación Parcial.*

Concluimos señalando que, insertos en una controversia sobre el pago de pensión alimentaria, tema del mayor interés público, vinculado al derecho a la vida, la devolución del asunto al foro recurrido se hace, subrayamos, con el muy limitado propósito de permitir prueba mediante la cual se precisen los gastos nuevos alegados por la menor de las hijas en proporción a los recursos de ambas partes, para propósitos del cumplimiento de nuestra *Sentencia* de 27 de junio de 2022.

Claro, la vista evidenciaria que aquí ordenamos bien podría evitarse, si las partes mostraran un esfuerzo de diálogo adicional para finiquitar cualquier asunto pendiente sobre la pensión alimentaria, según antes lo lograron a través de la *Estipulación Parcial*.

## IV. Parte dispositiva

Por los fundamentos expuestos, revocamos la determinación recurrida, a los únicos fines arriba precisados. En consecuencia, ordenamos la devolución del caso al Tribunal de Primera Instancia para que paute la celebración de una vista evidenciaria inmediata, conforme a lo establecido en la presente *Sentencia*.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones